## Succession of GILCREASE.

### No. 5624.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1938.

Rehearing Denied April 29, 1938.

Writ of Certiorari and Review Denied May 30, 1938.

J. D. Rusca, of Natchitoches, for appellant.

John G. Gibbs, of Natchitoches, for appellee.

HAMITER, Judge.

Death occurred to Stence Gilcrease at his domicile in Natchitoches Parish, Louisiana, on March 6, 1936. Mrs. Ella Gilcrease, his widow of a third marriage, presented a petition to the district court of that parish on April 4, 1936, alleging that decedent left a small amount of property and privileged and ordinary debts, and praying for letters of administration of the estate to issue to her.

Bryant Gilcrease, a child of decedent by a former marriage, opposed the widow's application. After a hearing, the opposition was sustained and the court ordered his appointment as administrator and that letters of administration issue to him upon complying with the requisites of law. In due course, suitable bond was furnished and evidence of his fulfillment of the law's requirements was filed.

While the estate was under administration some of decedent's heirs sold timber from a forty-acre tract of land which belonged to the community of acquets and gains that existed between decedent and his above mentioned widow. When the purchasers learned that the succession was in the process of administration, they delivered the sum of $135.00 due on the purchase price of the timber to defendant, who is the administrator's attorney.

Thereafter, said widow, who in the meantime had married one Bryant, made demand on defendant for a part of the timber proceeds. Her attorney wrote, under date of July 15, 1937, as follows:

"Mrs. Ella Gilcrease Bryant has placed in my hands for collection her claim for monies that have reached you account of timber being sold off of 40 acres of land that was community property between her and her husband. Her portion of this is $80.00.

"We are informed that $135.00 was turned over to you, and $25.00 to one of the Gilcrease heirs. Please let me have check by return mail in the sum of $80.00 payable to her."

Defendant replied:

"Mr. Hammett and Mr. Stahl delivered to me a draft on Shreveport in the sum of $135.00 to hold for the estate of Gilcrease. They represented the amount covered the purchase price of timber they

had purchased from the heirs and had cut, or were cutting. After the purchase, they stated they learned the succession was under administration.

"I have frequently sent word to Bryant Gilcrease, the administrator, through two of his sisters to call so that I could obtain the information necessary to file the final account and disburse the fund. For some reason he has not reported.

"Only the bill of Dr. Phelps and the costs. of administration are known to me. I stand ready to file the account as soon as Bryant reports."

Another letter was dispatched by the widow's attorney to defendant on July 17, 1937, which stated: "The timber was sold off of the 40 acres of land that was owned in community between Mrs. Gilcrease and her husband, Stence Gilcrease. Mrs. Gilcrease is not concerned with the expense of the Succession. Her half interest in the land could in no wise be involved in the Succession of her husband. The timber was sold for $160.00, and it is her request that you send a check to me, payable to her, for Eighty Dollars."

In reply defendant informed that he could "only deliver the sum to the estate of Gilcrease for whose account it was made".

On July 27, 1937, Mrs. Ella Gilcrease Bryant, decedent's said widow, presented a petition to the district court and obtained the issuance of a rule directing defendant to show cause why the aforementioned sum of $135.00 should not be deposited in the registry of the court. Defendant excepted to the petition as stating no cause and no right of action. He then answered averring that he received the deposit from the timber purchasers and obligated himself to see to its proper distribution in due course of administration, and that he "accepted the trust and responsibility for the reason he represented the succession as its attorney and was the surety on the bond of the administrator, who is without property or means. That under the terms of the deposit and the law, respondent is bound to see to the distribution of said deposit in due course".

A hearing was had, and there was judgment making the rule absolute and ordering defendant to deposit said funds with the Clerk of Court "to be distributed by the court as the law directs". Defendant appealed suspensively.

■ As the funds in question belonged to decedent's estate, which was undergoing at the time the process of administration, and were in the possession of the representative or attorney of the official qualified and directed to administer them, it may be correctly said that they were constructively in the hands of the succession administrator. The only provision of law pertaining to and regulating the deposit of succession funds held by the administrator, of which we have knowledge, is article 1150 of the Louisiana Civil Code. This affords ample protection to persons entitled to participate in such funds, and reads:

"All executors, administrators, curators and syndics shall deposit all moneys collected by them, as soon as the same shall come into their hands, in one of the chartered banks of this State, or in one of their branches, allowing interest on deposits, if there be one in the parish. They shall keep a bank book in their official name, and shall on no account withdraw the deposits, or any part thereof until a tableau of distribution shall be homologated, or unless ordered by a competent court, and then only to pay such debts as may be ordered for payment. On failure to comply with the provisions of this section, they shall be condemned jointly and severally with their securities to pay to the use of the estate twenty per cent. interest per annum on the amount not deposited or withdrawn without authority, besides all special damage suffered, and shall be dismissed from office."

We know of no enactment or law which provides for the placing of moneys of that character in the court's registry, and none has been cited to us. On the contrary, we find the Supreme Court stating in the case of Succession of Christy, 6 La.Ann. 427, that: "There is no law authorizing the deposit of the funds of the estate in the hands of the clerk of the court, but it was done in violation of law."

■ Furthermore, the record discloses the existence of succession debts. Plaintiff in rule alleged this in her application for appointment as administratrix. These obligations must be settled by the administrator before claimant's interest in the estate, which is residuary, is available to her. Satisfactory bond was required of and furnished by the administrator for her protection, and that of other interested parties, and she must await the orderly termination

of the administration for payment of her portion of the estate.

The judgment is annulled and set aside and the rule recalled, and plaintiff's demands are rejected at her cost.